**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION**

| | |
|---|---|
| **JUDITH HAMMONDS** and **RONNIE MCGRIFF**, on behalf of themselves and others similarly situated,<br><br>        Plaintiffs<br><br>v.<br><br>**ROBESON HEALTH CARE CORPORATION**,<br><br>        Defendant. | Case No.<br><br><br>**CLASS ACTION COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

   Plaintiffs Judith Hammonds and Ronnie McGriff, individually and on behalf of all others similarly situated, bring this action against Robeson Health Care Corporation ("Robeson" or "Defendant"). The following allegations are based on Plaintiffs' knowledge, investigations of counsel, facts of public record, and information and belief.

## NATURE OF THE ACTION

   1.  Plaintiffs seek to hold Defendant responsible for the injuries Robeson inflicted on Plaintiffs and over 15,000 others similarly situated due to Defendant's impermissibly inadequate data security, which caused the personal and health information of Plaintiffs and those similarly situated to be exposed to the public (the "Data Exposure").

   2.  Robeson is an integrated system of primary and preventive health services, with several locations throughout Robeson County and surrounding communities.

   3.  The data that Defendant exposed to the public is highly sensitive. According to Defendant's submission to the Maine Attorney General, the Data Exposure included personal identifying information ("PII") and protected health information ("PHI") including name, address, Social Security number, date of birth, treatment information/diagnosis, treating physician, medical

1

record number (MRN), patient ID number, Medicare/Medicaid number, prescription information, health insurance information, and treatment costs of Plaintiff and patients of Robeson ("Class Members").[1]

4.     According to the Notice of Data Security Event ("Notice") Plaintiffs received on or about April 21, 2023, Defendant became aware that its computer network was affected by malware on February 21, 2023. Defendant further explained that its "investigation determined an unauthorized third-party gained access to [its] systems between February 17 and February 21, 2023."[2]

5.     Upon information and belief, the risk of the Data Exposure was known to Defendant. Thus, Defendant was on notice that its inadequate data security created a heightened risk of exposure, compromise, and theft.

6.     After the Data Exposure, Defendant failed to provide timely notice to Plaintiffs and Class Members, thereby exacerbating their injuries. Ultimately, Defendant deprived Plaintiffs and Class Members of the chance to take speedy measures to protect themselves and mitigate harm. Simply put, Defendant impermissibly left Plaintiffs and Class Members in the dark—thereby causing their injuries to fester and the damage to spread.

7.     Today, the identities of Plaintiffs and Class Members are in jeopardy because of Defendant's negligence. Plaintiffs and Class Members now suffer from a heightened and imminent risk of fraud and identity theft and must now constantly monitor their financial accounts.

8.     The PII and PHI exposed in the Data Exposure can enable criminals to commit a litany of crimes. Criminals can now open new financial accounts in Class Members' names, take

---

[1] *Data Breach Notifications*, Office of the Maine Attorney General, https://apps.web.maine.gov/online/aeviewer/ME/40/11522f3b-bf12-4c95-ac30-9fa1cce8fba5.shtml (last visited May 3, 2023).
[2] *Id.*

out loans using Class Members' identities, use Class Members' names to obtain medical services, use Class Members' health information to craft phishing and other hacking attacks based on Class Members' individual health needs, use Class Members' identities to obtain government benefits, file fraudulent tax returns using Class Members' information, obtain driver's licenses in Class Members' names (but with another person's photograph), and give false information to police during an arrest.

9.      Plaintiffs and Class Members will likely suffer additional financial costs for purchasing necessary credit monitoring services, credit freezes, credit reports, or other protective measures to deter and detect fraud and identity theft.

10.     Plaintiffs and Class Members have suffered—and will continue to suffer—from the loss of the benefit of their bargain, unexpected out-of-pocket expenses, lost or diminished value of their PII and PHI, emotional distress, and the value of their time reasonably incurred to mitigate the fallout of the Defendant's Data Exposure.

11.     Through this action, Plaintiffs seek to remedy these injuries on behalf of themselves and all similarly situated individuals whose PII and PHI were exposed and compromised in the Data Exposure.

12.     Plaintiffs seek remedies including, but not limited to, compensatory damages, treble damages, punitive damages, reimbursement of out-of-pocket costs, and injunctive relief—including improvements to Defendant's data security systems, future annual audits, and adequate credit monitoring services funded by Defendant.

13.     Plaintiffs bring this action against Defendant and assert claims for: (1) negligence, (2) unjust enrichment, (3) breach of express contract, (4) breach of implied contract and (5) breach of fiduciary duty.

## PARTIES

14.     Plaintiff Ronnie McGriff is a natural person, resident, and citizen of North Carolina.

15.     Plaintiff Judith Hammonds is a natural person, resident, and citizen of North Carolina.

16.     Defendant Robeson Medical Corporation is a North Carolina entity with a principal place of business and headquarters at 60 Commerce Drive, Pembroke, NC 28372.

## JURISDICTION AND VENUE

17.     This Court has original jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because this is a class action involving more than 100 putative class members and the amount in controversy exceeds $5,000,000, exclusive of interest and costs. Minimal diversity is established because many members of the class are citizens of states different than Defendant.

18.     This Court has general personal jurisdiction over Defendant because Defendant's principal place of business and headquarters is in Pembroke, North Carolina. Defendant is also a citizen of North Carolina.

19.     Venue is proper in this District under 28 U.S.C. §1391(b)(1) and (2), and 1391(c)(2) because substantial part of the events giving rise to the claims emanated from activities within this District, and Defendant resides in and conducts substantial business in this District.

## FACTUAL ALLEGATIONS

### Defendant Collected and Stored the PII and PHI of Plaintiffs and Class Members

20.     Robeson is an integrated system of primary and preventive health services, with several locations throughout Robeson County and surrounding communities.

21.     Plaintiffs' and Class Members' PII and PHI was provided to Defendant in conjunction with the type of work Defendant does within the healthcare industry.

4

22.     Upon information and belief, Defendant collects and maintains PII and PHI such as patients' name, address, Social Security number, date of birth, treatment information/diagnosis, treating physician, medical record number (MRN), patient ID number, Medicare/Medicaid number, prescription information, health insurance information, and treatment costs in the ordinary course of business. These records are stored on Defendant's computer systems.

23.     Because of the highly sensitive and personal nature of the information Defendant acquires and stores, Defendant knew or reasonably should have known that it stored protected PII and PHI and therefore must comply with healthcare industry standards related to data security and all federal and state laws protecting customers' and patients' PII and PHI and provide adequate notice to customers if their PII or PHI is disclosed without proper authorization.

24.     Upon information and belief, when Defendant collects this sensitive information, it promises to use reasonable measures to safeguard the PII and PHI from theft and misuse.

25.     Defendant acquired, collected, and stored sensitive information, while representing that it maintained reasonable security over that information.

26.     By obtaining, collecting, receiving, and/or storing Plaintiffs' and Class Members' PII and PHI, Defendant assumed legal and equitable duties and knew, or should have known, that it was responsible for protecting Plaintiffs' and Class Members' PII and PHI from unauthorized disclosure.

27.     Plaintiffs and Class Members have taken reasonable steps to maintain the confidentiality of their PII and PHI, including but not limited to, protecting their usernames and passwords, using only strong passwords for their accounts, and refraining from browsing potentially unsafe websites.

28.     Upon information and belief, Plaintiffs and Class Members relied on Defendant

5

to keep their PII and PHI confidential and securely maintained, to use this information for business and healthcare purposes only, and to make only authorized disclosures of this information.

29.    Defendant could have prevented the Data Exposure by properly securing and encrypting and/or more securely encrypting its servers and Plaintiffs' and Class Members' PII and PHI.

30.    Defendant's negligence in safeguarding Plaintiffs' and Class Members' PII and PHI was exacerbated by repeated warnings and alerts directed at protecting and securing sensitive data, as evidenced by the trending data breach attacks in recent years.

31.    The healthcare industry in particular has experienced a large number of high-profile cyberattacks even in just the short period preceding the filing of this Complaint, and cyberattacks, generally, have become increasingly more common. More healthcare data breaches were reported in 2021 than in any other year.[3] Additionally, according to the HIPAA Journal, the largest healthcare data breaches have been reported beginning in April 2021.[4]

32.    In the context of data breaches, healthcare is "by far the most affected industry sector."[5] Further, cybersecurity breaches in the healthcare industry are particularly devastating, given the frequency of such breaches and the fact that healthcare providers maintain highly sensitive and detailed PII.[6] According to the cybersecurity firm Mimecast, 90% of healthcare organizations experienced cyberattacks in the past year.[7]

---

[3] *Healthcare Data Breach Statistics*, HIPAA Journal, https://www.hipaajournal.com/healthcare-data-breach-statistics (last visited May 3, 2023).
[4] *April 2021 Healthcare Data Exposure Report*, HIPAA journal (May 18, 2021) https://www.hipaajournal.com/april-2021-healthcare-data-breach-report/.
[5] Rody Quinlan, *Healthcare Security: Ransomware Plays a Prominent Role in COVID-19 Era Breaches*, Tenable (Mar. 10, 2023), https://www.tenable.com/blog/healthcare-security-ransomware-plays-a-prominent-role-in-covid-19-era-breaches.
[6] *Id.*
[7] Maria Henriquez, *Iowa City Hospital Suffers Phishing Attack*, Security Magazine (Nov. 23, 2020), https://www.securitymagazine.com/articles/93988-iowa-city-hospital-suffers-phishing-attack.

33. Despite the prevalence of public announcements of data breaches and data security compromises, Defendant failed to take appropriate steps to protect Plaintiffs' and Class Members' PII and PHI from being compromised.

34. Upon information and belief, Defendant failed to properly train its employees on cybersecurity best practices and to maintain proper staffing and processes for responding to and preventing network intrusions.

35. Upon information and belief, Defendant failed to implement sufficient processes to quickly detect and respond to data breaches, security incidents, or intrusions.

36. Upon information and belief, Defendant failed to encrypt Plaintiffs' and Class Members' PII and PHI and monitor user behavior and activity to identify possible threats.

37. Defendant failed to provide fair, reasonable, or adequate computer systems and data security practices to safeguard the PII and PHI of Plaintiffs and Class Members.

38. Defendant failed to timely and accurately disclose that Plaintiffs' and Class Members' PII and PHI had been improperly acquired or accessed.

39. Defendant knowingly disregarded standard information security principles, despite obvious risks, by allowing unmonitored and unrestricted access to unsecured PII and PHI.

***The Data Exposure***

40. Robeson's Notice Submitted to the Maine Attorney General states that:

On February 21, 2023, RHCC became aware that our computer network was affected by malware. We disconnected our network from the internet and partnered with computer forensic specialists to restore our systems safely and understand the nature and scope of the event. We commenced a thorough investigation which determined an unauthorized third-party gained access to our systems between February 17 and February 21, 2023.[8]

41. The letter further states that:

---

[8] *Data Breach Notifications*, Office of the Maine Attorney General, *supra*.

> The information potentially accessible on our network could have included your name, address, Social Security number, date of birth, treatment information/diagnosis, treating physician, medical record number (MRN), patient ID number, Medicare/Medicaid number, prescription information, health insurance information, and treatment costs.[9]

42.    The Notice otherwise gives no details to Class Members regarding the manner and means of how their information was disclosed and leaves Class Members wondering how they can protect themselves.

43.    Upon information and belief, Plaintiffs' and Class Members' PII and PHI was disclosed during the Data Exposure.

44.    Upon information and belief, Plaintiffs' and Class Members' affected PII and PHI was accessible, unencrypted, unprotected, and vulnerable for acquisition and/or exfiltration by unauthorized individuals.

45.    It is likely the Data Exposure was discovered by cybercriminals due to Defendant's status as healthcare related entity that collects, creates, and maintains both PII and PHI.

46.    Time is of the essence when highly sensitive PII and PHI are subject to unauthorized access and/or acquisition. The disclosed, accessed, and/or acquired PII and PHI of Plaintiffs and Class Members is likely available on the Dark Web. Hackers can access and then offer for sale the unencrypted, unredacted PII and PHI to criminals.

47.    Plaintiffs and Class Members are now subject to the present and continuing risk of fraud, identity theft, and misuse resulting from the possible publication of their PII and PHI, especially their Social Security numbers and sensitive medical information, onto the Dark Web. Plaintiffs and Class Members now face a lifetime risk of identity theft, which is heightened here

---

[9] *Id.*

by unauthorized access, disclosure, and/or activity by cybercriminals on computer systems containing hundreds of thousands of Social Security numbers and/or specific, sensitive medical information.

48. Defendant largely puts the burden on Plaintiffs and Class Members to take measures to protect themselves from identity theft and fraud.

49. Time is a compensable and valuable resource in the United States. According to the U.S. Bureau of Labor Statistics, 55.5% of U.S.-based workers are compensated on an hourly basis, while the other 44.5% are salaried.[10]

50. According to the U.S. Bureau of Labor Statistics' 2018 American Time Use Survey, American adults have only 36 to 40 hours of "leisure time" outside of work per week;[11] leisure time is defined as time not occupied with work or chores and is "the time equivalent of 'disposable income.'"[12] Usually, this time can be spent at the option and choice of the individual, however, having been notified of the Data Exposure, Class Members now have to spend hours of their leisure time self-monitoring their accounts, communicating with financial institutions and government entities, and placing other prophylactic measures in place to attempt to protect themselves.

51. Plaintiffs and Class Members are now deprived of the choice as to how to spend their valuable free hours and seek renumeration for the loss of valuable time as another element of damages.

52. Defendant offered identity monitoring services for a period of 12 months.

---

[10] *Characteristics of Minimum Wage Workers, 2020*, U.S. Bureau of Labor Statistics (Feb. 2021), https://www.bls.gov/opub/reports/minimum-wage/2020/home.htm.
[11] Cory Stieg, *You're Spending Your Free Time Wrong — Here's What to Do to Be Happier and More Successful*, CNBC (Nov. 6, 2019), https://www.cnbc.com/2019/11/06/how-successful-people-spend-leisure-time- james-wallman.html.
[12] *Id.*

53.     Such measures, however, are insufficient to protect Plaintiffs and Class Members from the lifetime risks they each now face. As another element of damages, Plaintiffs and Class Members seek a sum of money sufficient to provide to Plaintiffs and Class Members identity theft protection services for their respective lifetimes.

54.     Defendant's Notice omits the size and scope of the breach. Defendant has demonstrated a pattern of providing inadequate notice and disclosures about the Data Exposure.

55.     Plaintiffs and the Class Members remain, even today, completely in the dark regarding what particular data was stolen, the particular method of disclosure, the results of any investigations, and what steps are being taken, if any, to secure their PII and PHI going forward. Plaintiffs and Class Members are left to speculate as to the full impact of the Data Exposure and how exactly Defendant intends to enhance its information security systems and monitoring capabilities so as to prevent further breaches.

***Defendant Failed to Comply with FTC Guidelines***

56.     According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making.[13] To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as Defendant, should employ to protect against the unlawful exposure of PII and PHI.

57.     In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established guidelines for fundamental data security principles and practices for business.[14] The guidelines explain that businesses should:

---

[13] *Start with Security: A Guide for Business*, Federal Trade Commission (June 2015), https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf.
[14] *Protecting Personal Information: A Guide for Business*, Federal Trade Commission (Oct. 2016), https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

a.    protect the personal customer information that they keep;

b.    properly dispose of personal information that is no longer needed;

c.    encrypt information stored on computer networks;

d.    understand their network's vulnerabilities; and

e.    implement policies to correct security problems.

58.    The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

59.    The FTC recommends that companies not maintain PII and PHI longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[15]

60.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

61.    These FTC enforcement actions include actions against healthcare providers and partners like Defendant. *See, e.g., In the Matter of LabMD, Inc., a Corp*, No. 9357, 2016-2 Trade Cas. (CCH) 79,708, 2016 WL 4128215, at *32 (MSNET July 28, 2016) ("[T]he Commission concludes that LabMD's data security practices were unreasonable and constitute an unfair act or

---

[15] *Start with Security: A Guide for Business*, Federal Trade Commission, *supra*.

practice in violation of Section 5 of the FTC Act.").

62.     Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to patient PII and PHI constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

***Defendant Failed to Follow Industry Standards***

63.     Despite its alleged commitments to securing sensitive patient data, Defendant does not follow industry standard practices in securing patients' PII and PHI.

64.     As shown above, experts studying cyber security routinely identify healthcare related entities as being particularly vulnerable to cyberattacks because of the value of the PII and PHI which they collect and maintain.

65.     Several best practices have been identified that at a minimum should be implemented by healthcare providers like Defendant, including but not limited to, educating all employees on the risks of cyberattacks; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data; and limiting which employees can access sensitive data.

66.     Other best cybersecurity practices that are standard in the healthcare industry include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points.

67.     Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5,

PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

68.     Such frameworks are the existing and applicable industry standards in the healthcare industry. Defendant failed to comply with these accepted standards, thus opening the door to criminals and the Data Exposure.

***Defendant Violated HIPAA***

69.     HIPAA circumscribes security provisions and data privacy responsibilities designed to keep patients' medical information safe. HIPAA compliance provisions, commonly known as the Administrative Simplification Rules, establish national standards for electronic transactions and code sets to maintain the privacy and security of protected health information.[16]

70.     HIPAA provides specific privacy rules that require comprehensive administrative, physical, and technical safeguards to ensure the confidentiality, integrity, and security of PII and PHI is properly maintained.[17]

71.     The Data Exposure itself resulted from a combination of inadequacies showing Defendant failed to comply with safeguards mandated by HIPAA. Defendant's security failures include, but are not limited to:

    a.     Failing to ensure the confidentiality and integrity of electronic PHI that it creates, receives, maintains, and transmits in violation of 45 C.F.R. § 164.306(a)(1);

    b.     Failing to protect against any reasonably-anticipated threats or hazards to the

---

[16] HIPAA lists 18 types of information that qualify as PHI according to guidance from the Department of Health and Human Services Office for Civil Rights, and includes, inter alia: names, addresses, any dates including dates of birth, Social Security numbers, and medical record numbers.
[17] *See* 45 C.F.R. § 164.306 (security standards and general rules); 45 C.F.R. § 164.308 (administrative safeguards); 45 C.F.R. § 164.310 (physical safeguards); 45 C.F.R. § 164.312 (technical safeguards).

security or integrity of electronic PHI in violation of 45 C.F.R. § 164.306(a)(2);

c. Failing to protect against any reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

d. Failing to ensure compliance with HIPAA security standards by Defendant's workforce in violation of 45 C.F.R. § 164.306(a)(4);

e. Failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

f. Failing to implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 C.F.R. § 164.308(a)(1);

g. Failing to identify and respond to suspected or known security incidents and failing to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 C.F.R. § 164.308(a)(6)(ii);

h. Failing to effectively train all staff members on the policies and procedures with respect to PHI as necessary and appropriate for staff members to carry out their functions and to maintain security of PHI in violation of 45 C.F.R. § 164.530(b) and 45 C.F.R. § 164.308(a)(5); and

i. Failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard PHI, in compliance with 45 C.F.R. § 164.530(c).

72. Defendant recognizes that it is a Covered Entity under HIPAA and agrees that it

will comply with HIPAA. Simply put, however, the Data Exposure resulted from a combination of insufficiencies that demonstrate Defendant indeed failed to comply with safeguards mandated by HIPAA regulations.

**The Experiences and Injuries of Plaintiffs**

73.     Plaintiffs and Class Members are the current and former patients of Robeson. As a prerequisite of receiving healthcare services from Robeson, Defendant required Plaintiffs and Class Members to disclose their PII and PHI.

74.     When Defendant finally announced the Data Exposure, it deliberately underplayed the Data Exposure's severity and obfuscated the nature of the Data Exposure. Defendant's Data Exposure Notice sent to patients fails to adequately explain how the breach occurred, what exact data elements of each affected individual were compromised, and the extent to which those data elements were compromised.

75.     Because of the Data Exposure, Defendant inflicted injuries upon Plaintiffs and Class Members. And yet, Defendant has done little to provide Plaintiffs and the Class Members with relief for the damages they suffered.

*Plaintiff McGriff*

76.     Plaintiff McGriff entrusted his PII and PHI to Defendant in conjunction with receiving healthcare services. Plaintiff McGriff had the reasonable expectation and understanding that Defendant would take—*at minimum*—industry standard precautions to protect, maintain, and safeguard that information from unauthorized users or disclosure, and would timely notify him of any data security incidents. After all, Plaintiff McGriff would not have entrusted his PII and PHI to Defendant had he known that Defendant would not take reasonable steps to safeguard his information.

77.     Plaintiff McGriff suffered actual injury from having his PII and PHI compromised in the Data Exposure including, but not limited to, (a) damage to and diminution in the value of his PII and PHI—a form of property that Defendant obtained from Plaintiff McGriff; (b) violation of his privacy rights; (c) the likely theft of his PII and PHI; (d) fraudulent activity resulting from the Data Exposure; and (e) present and continuing injury arising from the increased risk of additional identity theft and fraud.

78.     As a result of the Data Exposure, Plaintiff McGriff also suffered emotional distress because of the release of his PII and PHI—which he believed would be protected from unauthorized access and disclosure.

79.     Because of the Data Exposure, Plaintiff McGriff has spent—and will continue to spend—considerable time and money to try to mitigate and address harms caused by the Data Exposure.

80.     As a result of the Data Exposure and Defendant's Notice, Plaintiff McGriff made reasonable efforts to mitigate the impact of the Data Exposure, including but not limited to researching the Data Exposure checking his accounts for fraud.

81.     Plaintiff McGriff will continue to spend valuable time he otherwise would have spent on other activities, including but not limited to work and/or recreation, responding to the Data Exposure.

82.     Plaintiff McGriff suffered lost time, annoyance, interference, and inconvenience as a result of the Data Exposure and has experienced anxiety and increased concerns for the loss of his privacy, as well as anxiety over the impact of cybercriminals accessing and using his PII and PHI.

83.     Plaintiff McGriff has a continuing interest in ensuring that his PII and PHI,

which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

*Plaintiff Hammonds*

84.     Plaintiff Hammonds entrusted her PII and PHI to Defendant in conjunction with receiving healthcare services. Plaintiff Hammonds had the reasonable expectation and understanding that Defendant would take—*at minimum*—industry standard precautions to protect, maintain, and safeguard that information from unauthorized users or disclosure, and would timely notify her of any data security incidents. After all, Plaintiff Hammonds would not have entrusted her PII and PHI to Defendant had she known that Defendant would not take reasonable steps to safeguard her information.

85.     Plaintiff Hammonds suffered actual injury from having her PII and PHI compromised in the Data Exposure including, but not limited to, (a) damage to and diminution in the value of her PII and PHI—a form of property that Defendant obtained from Plaintiff Hammonds; (b) violation of her privacy rights; (c) the likely theft of her PII and PHI; (d) fraudulent activity resulting from the Data Exposure; and (e) present and continuing injury arising from the increased risk of additional identity theft and fraud.

86.     As a result of the Data Exposure, Plaintiff Hammonds also suffered emotional distress because of the release of her PII and PHI—which she believed would be protected from unauthorized access and disclosure.

87.     Because of the Data Exposure, Plaintiff Hammonds has spent—and will continue to spend—considerable time and money to try to mitigate and address harms caused by the Data Exposure. In fact, Plaintiff Hammonds has spent about an hour so far placing contacting the credit bureaus to place alerts on her credit files.

88.     As a result of the Data Exposure and Defendant's Notice, Plaintiff Hammonds made reasonable efforts to mitigate the impact of the Data Exposure, including but not limited to researching the Data Exposure checking her accounts for fraud.

89.     Plaintiff Hammonds will continue to spend valuable time she otherwise would have spent on other activities, including but not limited to work and/or recreation, responding to the Data Exposure.

90.     Plaintiff Hammonds suffered lost time, annoyance, interference, and inconvenience as a result of the Data Exposure and has experienced anxiety and increased concerns for the loss of her privacy, as well as anxiety over the impact of cybercriminals accessing and using her PII and PHI.

91.     Plaintiff Hammonds has a continuing interest in ensuring that her PII and PHI, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

***Plaintiffs and the Class Face Significant Risk of Present and Continuing Identity Theft***

92.     Plaintiffs and Class Members suffered injury from the misuse of their PII and PHI that can be directly traced to Defendant.

93.     The ramifications of Defendant's failure to keep Plaintiffs' and the Class's PII and PHI secure are severe. Identity theft occurs when someone uses another's personal and financial information such as that person's name, address, Social Security number, date of birth, treatment information/diagnosis, treating physician, medical record number (MRN), patient ID number, Medicare/Medicaid number, prescription information, health insurance information, and treatment cost, and/or other information, without permission, to commit fraud or other crimes.

94.     According to experts, one out of four data breach notification recipients become a

victim of identity fraud.[18]

95.    As a result of Defendant's failures to prevent—and to timely detect—the Data Exposure, Plaintiffs and Class Members suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. They have suffered or are at an increased risk of suffering:

a.    The loss of the opportunity to control how their PII and PHI is used;

b.    The diminution in value of their PII and PHI;

c.    The compromise and continuing publication of their PII and PHI;

d.    Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

e.    Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and future consequences of the Data Exposure, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

f.    Delay in receipt of tax refund monies;

g.    Unauthorized use of stolen PII and PHI; and

h.    The continued risk to their PII and PHI, which remains in the possession of Defendant and is subject to further breaches so long as Defendant fails to undertake the appropriate measures to protect the PII and PHI in their possession.

96.    Stolen PII and PHI is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII and PHI

---

[18] Anne Saita, *Study Shows One in Four Who Receive Data Breach Letter Become Fraud Victims*, Threat Post (Feb. 21, 2013), https://threatpost.com/study-shows-one-four- who-receive-data-breach-letter-become-fraud-victims-022013/77549/.

can be worth up to $1,000.00 depending on the type of information obtained.[19]

97.     The value of Plaintiffs' and the Class's PII and PHI on the black market is considerable. Stolen PII and PHI trades on the black market for years, and criminals frequently post stolen private information openly and directly on various "dark web" internet websites, making the information publicly available, for a substantial fee of course.

98.     It can take victims years to spot or identify PII and PHI theft, giving criminals plenty of time to milk that information for cash.

99.     One such example of criminals using PII and PHI for profit is the development of "Fullz" packages.[20]

100.     With "Fullz" packages, cyber-criminals can cross-reference two sources of PII and PHI to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals.

101.     The development of "Fullz" packages means that stolen PII and PHI from the Data Exposure can easily be used to link and identify it to Plaintiffs' and the proposed Class's phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if

_____

[19] Brian Stack, *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian (Dec. 6, 2017), https://www.experian.com/blogs/ask-experian/heres-how-much-your- personal-information-is-selling-for-on-the-dark-web/.

[20] "Fullz" is fraudster speak for data that includes the information of the victim, including, but not limited to, the name, address, credit card information, social security number, date of birth, and more. As a rule of thumb, the more information you have on a victim, the more money can be made off those credentials. Fullz are usually pricier than standard credit card credentials, commanding up to $100 per record or more on the dark web. Fullz can be cashed out (turning credentials into money) in various ways, including performing bank transactions over the phone with the required authentication details in-hand. Even "dead Fullz", which are Fullz credentials associated with credit cards that are no longer valid, can still be used for numerous purposes, including tax refund scams, ordering credit cards on behalf of the victim, or opening a "mule account" (an account that will accept a fraudulent money transfer from a compromised account) without the victim's knowledge. See, e.g., Brian Krebs, *Medical Records for Sale in Underground Stolen From Texas Life Insurance Firm*, Krebs on Security (Sep. 18, 2014), https://krebsonsecurity.com/2014/09/medical-records-for-sale-in-underground-stolen-from-texas-life-insurance-firm/.

certain information such as emails, phone numbers, or credit card numbers may not be included in the PII and PHI stolen by the cyber-criminals in the Data Exposure, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiffs and members of the proposed Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiffs' and other members of the proposed Class's stolen PII and PHI is being misused, and that such misuse is fairly traceable to the Data Exposure.

102. According to the FBI's Internet Crime Complaint Center (IC3) 2019 Internet Crime Report, Internet-enabled crimes reached their highest number of complaints and dollar losses that year, resulting in more than $3.5 billion in losses to individuals and business victims.

103. Further, according to the same report, "rapid reporting can help law enforcement stop fraudulent transactions before a victim loses the money for good." Defendant did not rapidly report to Plaintiffs and the Class that their PII and PHI had been stolen.

104. Victims of identity theft also often suffer embarrassment, blackmail, or harassment in person or online, and/or experience financial losses resulting from fraudulently opened accounts or misuse of existing accounts.

105. In addition to out-of-pocket expenses that can exceed thousands of dollars and the emotional toll identity theft can take, some victims have to spend a considerable time repairing the damage caused by the theft of their PII and PHI. Victims of identity theft will likely have to spend time correcting fraudulent information in their credit reports and continuously monitor their reports for future inaccuracies, close existing bank/credit accounts, open new ones, and dispute charges with creditors.

106. The FTC has also recognized that consumer data is a new and valuable form of

currency. In an FTC roundtable presentation, former Commissioner Pamela Jones Harbour stated that "most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable. Data is currency."[21]

107.    The healthcare industry has "emerged as a primary target [for data breaches] because [it sits] on a gold mine of sensitive personally identifiable information for thousands of patients at any given time. From social security and insurance policies to next of kin and credit cards, no other organization, including credit bureaus, ha[s] so much monetizable information stored in their data centers."[22]

108.    Charged with handling highly sensitive PII and PHI including healthcare information, financial information, and insurance information, Defendant knew or should have known the importance of safeguarding the PII and PHI that was entrusted to it.

109.    Defendant also knew or should have known of the foreseeable consequences if its data security systems were breached. This includes the significant costs that would be imposed on Defendant's patients as a result of a breach. Defendant nevertheless failed to take adequate cybersecurity measures to prevent the Data Exposure from occurring.

110.    Defendant's use of outdated and insecure computer systems and software that are easy to hack, and its failure to maintain adequate security measures and up-to-date technology security strategies demonstrates a willful and conscious disregard for privacy, and has exposed the PII and PHI of Plaintiffs and over 15,000 members of the proposed Class to unscrupulous

---

[21] *Commissioner Pamela Jones Harbour: Remarks Before FTC Exploring Privacy Roundtable*, Federal Trade Commission (Dec. 7, 2009),
https://www.ftc.gov/sites/default/files/documents/public_statements/remarks-ftc-exploring-privacy-roundtable/091207privacyroundtable.pdf.
[22] Eyal Benishti, *How to Safeguard Hospital Data from Email Spoofing Attacks*, Chief Healthcare Executive (Apr. 4, 2019), https://www.chiefhealthcareexecutive.com/view/how-to-safeguard-hospital-data-from-email-spoofing-attacks.

operators, con artists, and outright criminals.

## **CLASS ACTION ALLEGATIONS**

111.     Plaintiffs bring this action on behalf of themselves and on behalf of all other

persons similarly situated (the "Class") under Fed. R. Civ. P. 23(b)(2), 23(b)(3), and 23(c)(4).

112.     Plaintiffs proposes the following Class definition, subject to amendment as

appropriate:

> All persons residing in the United States whose PII or PHI was impacted by the
> Data Exposure—including all persons that Defendant sent a Notice of the Data
> Exposure to.

113.     The Class defined above is readily ascertainable from information in Defendant's

possession. Thus, such identification of Class Members will be reliable and administratively

feasible.

114.     Excluded from the Class are: (1) any judge or magistrate presiding over this action

and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors,

predecessors, affiliated entities, and any entity in which Defendant or their parent has a controlling

interest, and their current or former officers and directors; (3) persons who properly execute and

file a timely request for exclusion from the Class; (4) persons whose claims in this matter have

been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and

Defendant's counsel; (6) members of the jury; and (7) the legal representatives, successors, and

assigns of any such excluded persons.

115.     Plaintiffs reserve the right to amend or modify the Class definition as this case

progresses.

116.     Plaintiffs satisfy the numerosity, commonality, typicality, and adequacy

requirements under Fed. R. Civ. P. 23.

117.     **Numerosity**. Class Members are numerous such that joinder is impracticable.

Based on information and belief, the Class consists of the approximately 15,000 individuals[23] whose PII and PHI were compromised by Defendant's Data Exposure.

118. **Commonality**. There are many questions of law and fact common to the Class. These common questions predominate over any individualized questions of individual Class Members. These common questions of law and fact include, without limitation:

a. If Defendant unlawfully used, maintained, lost, or disclosed Plaintiffs' and Class Members' PII and PHI;

b. If Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Exposure;

c. If Defendant's data security systems prior to and during the Data Exposure complied with applicable data security laws and regulations including, *e.g.*, HIPAA;

d. If Defendant's data security systems prior to and during the Data Exposure were consistent with industry standards;

e. If Defendant owed a duty to Class Members to safeguard their PII and PHI.

f. If Defendant breached its duty to Class Members to safeguard their PII and PHI;

g. If Defendant knew or should have known that its data security systems and monitoring processes were deficient;

h. If Defendant should have discovered the Data Exposure earlier;

i. If Defendant took reasonable measures to determine the extent of the Data Exposure after it was discovered;

---

[23] *Data Breach Notifications*, Office of the Maine Attorney General, *supra*.

j.   If Defendant's delay in informing Plaintiffs and Class Members of the Data Exposure was unreasonable;

k.   If Defendant's method of informing Plaintiffs and Class Members of the Data Exposure was unreasonable;

l.   If Defendant's conduct was negligent;

m.   If Plaintiffs and Class Members were injured as a proximate cause or result of the Data Exposure;

n.   If Plaintiffs and Class Members suffered legally cognizable damages as a result of Defendant's misconduct;

o.   If Defendant breached implied contracts with Plaintiffs and Class Members;

p.   If Defendant was unjustly enriched by unlawfully retaining a benefit conferred upon them by Plaintiffs and Class Members;

q.   If Defendant failed to provide notice of the Data Exposure in a timely manner; and

r.   If Plaintiffs and Class Members are entitled to damages, civil penalties, punitive damages, treble damages, and/or injunctive relief.

119.   **Typicality**. Plaintiffs' claims are typical of those of other Class Members because Plaintiffs' information, like that of every other Class Member, was compromised in the Data Exposure. Moreover, Plaintiffs and Class Members were subjected to Defendant's uniformly illegal and impermissible conduct.

120.   **Adequacy of Representation**. Plaintiffs will fairly and adequately represent and protect the interests of the Members of the Class. Plaintiffs' counsel are competent and experienced in litigating complex class actions. Plaintiffs have no interests that conflict with, or are antagonistic to, those of the Class.

121.     **Predominance**. Defendant has engaged in a common course of conduct toward Plaintiffs and Class Members, in that Plaintiffs' and Class Members' data was stored on the same computer system and unlawfully exposed in the same way. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

122.     **Superiority**. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a Class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

123.     The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrate that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

124.     Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

125.     Likewise, particular issues under Rule 23(c)(4) are appropriate for certification

because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include those set forth above.

126.     Defendant has acted on grounds that apply generally to the Class as a whole, so that Class certification, injunctive relief, and corresponding declaratory relief are appropriate on a Class-wide basis.

## **FIRST CAUSE OF ACTION**

### **Negligence**

### **(On Behalf of Plaintiffs and the Class)**

127.     Plaintiffs restate and reallege all of the foregoing paragraphs as if fully set forth herein.

128.     Defendant required its customers and patients to submit PII and PHI in order to receive Defendant's services.

129.     By collecting and storing this data in their computer system and network, and sharing it and using it for commercial gain, Defendant owed a duty of care to use reasonable means to secure and safeguard their computer system—and Plaintiffs' and Class Members' PII and PHI held within it—to prevent disclosure of the information, and to safeguard the information from theft. Defendant's duty included a responsibility to implement processes so they could detect a breach of its security systems in a reasonably expeditious period of time and to give prompt notice to those affected in the case of a data breach.

130.     The risk that unauthorized persons would attempt to gain access to the PII and PHI and misuse it was foreseeable. Given that Defendant holds vast amounts of PII and PHI, it was inevitable that unauthorized individuals would at some point try to access Defendant's databases

27

of PII and PHI.

131. After all, PII and PHI are highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the PII and PHI of Plaintiffs and Class Members. Thus, Defendant knew, or should have known, the importance of exercising reasonable care in handling the PII and PHI entrusted to them.

132. Defendant owed a duty of care to Plaintiffs and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that their systems and networks, and the personnel responsible for them, adequately protected the PII and PHI.

133. Defendant's duty of care to use reasonable security measures arose because of the special relationship that existed between Defendant and patients, which is recognized by laws and regulations including but not limited to HIPAA, as well as common law. Defendant was in a superior position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Class Members from a data breach.

134. Defendant failed to take appropriate measures to protect the PII and PHI of Plaintiffs and the Class. Defendant is morally culpable, given the prominence of security breaches in the healthcare industry. Any purported safeguards that Defendant had in place were wholly inadequate.

135. Defendant breached its duty to exercise reasonable care in safeguarding and protecting Plaintiffs' and the Class members' PII and PHI by failing to adopt, implement, and maintain adequate security measures to safeguard that information, despite known data breaches in the healthcare industry, and allowing unauthorized access to Plaintiffs' and the other Class Members' PII and PHI.

136.    The failure of Defendant to comply with industry and federal regulations evinces Defendant's negligence in failing to exercise reasonable care in safeguarding and protecting Plaintiffs' and Class Members' PII and PHI.

137.    Defendant also had a duty to protect and maintain and provide adequate data security to maintain Plaintiffs and the Class's PII and PHI under § 5 of the FTCA, 15 U.S.C. § 45.

138.    The FTCA prohibits unfair business practices affecting commerce, which the FTC has interpreted to include a failure to use reasonable measures to safeguard sensitive information.

139.    Defendant's violation of these duties is negligence *per se* under North Carolina law.

140.    Plaintiffs and the proposed Class are included in the class of persons that the FTCA was intended to protect.

141.    The harm the Data Exposure caused is of the type the FTCA was intended to guard against.

142.    But for Defendant's wrongful and negligent breach of their duties to Plaintiffs and the Class, patients' PII and PHI would not have been compromised, stolen, and viewed by unauthorized persons. Defendant's negligence was a direct and legal cause of the theft of the PII and PHI of Plaintiffs and the Class and all resulting damages.

143.    The injury and harm suffered by Plaintiffs and Class Members was the reasonably foreseeable result of Defendant's failure to exercise reasonable care in safeguarding and protecting Plaintiffs' and the other Class members' PII and PHI. Defendant knew or should have known that their systems and technologies for processing and securing the PII and PHI of Plaintiffs and the Class had security vulnerabilities.

144.    Defendant's negligence caused Plaintiffs and the proposed Class actual, tangible,

injury-in-fact and damages, including, without limitation, the theft of their PII and PHI by criminals, improper disclosure of their PII and PHI, lost benefit of their bargain, lost value of their PII and PHI, and lost time and money incurred to mitigate and remediate the effects of the Data Exposure that resulted from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing, imminent, immediate.

145.     As a result of this misconduct by Defendant, the PII, PHI, and other sensitive information of Plaintiffs and the Classes was compromised, placing them at a greater risk of identity theft and their PII and PHI being disclosed to third parties without the consent of Plaintiffs and the Class.

## SECOND CAUSE OF ACTION

### Unjust Enrichment

### (On Behalf of Plaintiffs and the Class)

146.     Plaintiffs restate and reallege all of the foregoing paragraphs as if fully set forth herein.

147.     Plaintiffs and Class Members conferred a benefit on Defendant by entrusting their PII and PHI to Defendant from which Defendant derived profits.

148.     Defendant enriched themselves by saving the costs they reasonably should have expended on data security measures to secure Plaintiffs and Class Members' PII and PHI. Instead of providing a reasonable level of security that would have prevented the Data Exposure, Defendant instead calculated to avoid their data security obligations at the expense of Plaintiffs and Class Members by utilizing cheaper, ineffective security measures. Plaintiffs and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's failure to provide adequate security.

149.     Under the principles of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiffs and Class Members, because Defendant failed to implement appropriate data management and security measures that are mandated by industry standards.

150.     Defendant acquired the PII and PHI through inequitable means in that Defendant failed to disclose the inadequate security practices, previously alleged, and failed to maintain adequate data security.

151.     If Plaintiffs and Class Members knew that Defendant had not secured their PII and PHI, they would not have agreed to disclose their data to Defendant.

152.     Plaintiffs and Class Members have no adequate remedy at law.

153.     As a direct and proximate result of Defendant's conduct, Plaintiffs and Class Members have suffered—and will continue to suffer—a host of injuries, including but not limited to: (1) actual identity theft; (2) the loss of the opportunity to determine how their PII and PHI is used; (3) the compromise, publication, and/or theft of their PII and PHI; (4) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their PII and PHI; (5) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Exposure, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (6) the continued risk to their PII and PHI, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII and PHI in their possession; and (7) future expenditures of time, effort, and money that will be spent trying to prevent, detect, contest, and repair the impact of Defendant's Data Exposure.

154.     As a direct and proximate result of Defendant's conduct, Plaintiffs and Class Members suffered—and will continue to suffer—other forms of injury and/or harm.

155.     Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiffs and Class Members, the benefits it received as a result of obtaining Plaintiffs' and Class Members' PII and PHI.

## THIRD CAUSE OF ACTION

### Breach of Express Contract

### (On Behalf of Plaintiffs and the Class)

156.     Plaintiffs restate and reallege all of the foregoing paragraphs as if fully set forth herein.

157.     This count is pleaded in the alternative to Count II (Unjust Enrichment) above.

158.     Plaintiffs and Class Members allege that they were the express, foreseeable, and intended beneficiaries of valid and enforceable express contracts between Defendant and its former and current customers, contract(s) that (upon information and belief) include obligations to keep sensitive PII and PHI private and secure.

159.     Upon information and belief, these contracts included promises made by Defendant that expressed and/or manifested intent that the contracts were made to primarily and directly benefit the Plaintiffs and the Class (all customers entering into the contracts), as Defendant's business is for healthcare services for Plaintiffs and the Class, but also safeguarding the PII and PHI entrusted to Defendant in the process of providing healthcare services.

160.     Upon information and belief, Defendant's representations required Defendant to implement the necessary security measures to protect Plaintiffs' and Class Members' PII and PHI.

161.     Defendant materially breached its contractual obligation to protect the PII and PHI

of Plaintiffs and Class Members when the information was accessed and exfiltrated by unauthorized individuals as part of the Data Exposure.

162. The Data Exposure was a reasonably foreseeable consequence of Defendant's actions in breach of these contracts.

163. As a direct and proximate result of the Data Exposure, Plaintiffs and Class Members have been harmed and have suffered, and will continue to suffer, actual damages and injuries, including without limitation the release, disclosure of their PII, the loss of control of their PII, the present risk of suffering additional damages, and out-of-pocket expenses.

164. Plaintiffs and Class Members are entitled to compensatory, consequential, and nominal damages suffered as a result of the Data Exposure.

**FOURTH CAUSE OF ACTION**

**Breach of Implied Contract**

**(On Behalf of Plaintiffs and the Nationwide Class)**

165. Plaintiffs re-allege and incorporate by reference the foregoing paragraphs as if fully set forth herein.

166. This count is plead in the alternative to Count II (Unjust Enrichment) above.

167. Plaintiffs' and Class Members' PII and PHI was provided to Defendant as part the healthcare services that Defendant provided to Plaintiffs and Class Members.

168. Plaintiffs and Class Members agreed to pay Defendant for its products and services.

169. Defendant and the Plaintiffs and Class Members entered into implied contracts for the provision of adequate data security, separate and apart from any express contracts concerning the security of Plaintiffs' and Class Members' PII and PHI, whereby Defendant was obligated to

take reasonable steps to secure and safeguard Plaintiffs' and Class Members' PII and PHI.

170.    Defendant had an implied duty of good faith to ensure that the PII and PHI of Plaintiffs and Class Members in its possession was only used in accordance with its contractual obligations.

171.    Defendant was therefore required to act fairly, reasonably, and in good faith in carrying out its contractual obligations to protect the confidentiality of Plaintiffs' and Class Members' PII and PHI and to comply with industry standards and applicable laws and regulations for the security of this information.

172.    Under these implied contracts for data security, Defendant was further obligated to provide Plaintiffs and all Class Members, with prompt and sufficient notice of any and all unauthorized access and/or theft of their PII and PHI.

173.    Defendant breached the implied contracts by failing to take adequate measures to protect the confidentiality of Plaintiffs' and Class Members' PII and PHI, resulting in the Data Breach.

174.    Defendant further breached the implied contract by providing untimely notification to Plaintiffs and Class Members who may already be victims of identity fraud or theft or are at present risk of becoming victims of identity theft or fraud.

175.    The Data Exposure was a reasonably foreseeable consequence of Defendant's actions in breach of these contracts.

176.    As a result of Defendant's conduct, Plaintiffs and Class Members did not receive the full benefit of the bargain.

177.    Had Defendant disclosed that its data security was inadequate, neither the Plaintiffs or Class Members, nor any reasonable person would have entered into such contracts

with Defendant.

178.     As a result of Data Breach, Plaintiffs and Class Members suffered actual damages resulting from the theft of their PII and PHI, as well as the loss of control of their PII and PHI, and remain at present risk of suffering additional damages.

179.     Plaintiffs and Class Members are entitled to compensatory, consequential, and nominal damages suffered as a result of the Data Exposure, including the loss of the benefit of the bargain.

180.     Plaintiffs and Class Members are also entitled to injunctive relief requiring Defendant to, e.g., (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit monitoring to all Class Members.

## FIFTH CAUSE OF ACTION

### Breach of Fiduciary Duty

### (On Behalf of Plaintiffs and the Class)

181.     Plaintiffs re-allege and incorporate by reference the foregoing paragraphs as if fully set forth herein.

182.     A relationship existed between Plaintiff, the Class Members, and Defendant, which arose from Defendant's acceptance of Plaintiffs' and the Class Members' PII and PHI and Defendant's representations of its commitment to protect said PII and PHI.

183.     The interests of public policy mandates that a fiduciary duty is imputed given Defendant's acceptance of Plaintiffs' and the Class Members' PII and PHI and Defendant's representations of its commitment to protect said PII and PHI.

184.     Defendant breached the fiduciary duty that it owed to Plaintiffs and Class

Members because Defendant failed to act with the utmost good faith, fairness, honesty, and the highest degree of loyalty, and ultimately failed to protect the PII and PHI of Plaintiffs and Class Members.

185.    Defendant's breach of fiduciary duty was a legal cause of damage to Plaintiffs and Class Members.

186.    But for Defendant's breach of fiduciary duty, the damage to Plaintiffs and Class Members would not have occurred.

187.    Defendant's breach of fiduciary duty contributed substantially to the damage suffered by Plaintiffs and Class Members.

188.    As a direct and proximate result of Defendant's breach of fiduciary duty, Plaintiffs and Class Members are entitled to and demand actual, consequential, nominal damages, and injunctive relief.

**PRAYER FOR RELIEF**

WHEREFORE Plaintiffs, on behalf of themselves and all others similarly situated, request the following relief:

A.    An Order certifying this action as a class action and appointing Plaintiffs as Class Representatives and the undersigned as Class Counsel;

B.    A mandatory injunction directing Defendant to adequately safeguard the PII and PHI of Plaintiffs and the Class hereinafter by implementing improved security procedures and measures, including but not limited to an Order:

    i.    prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

    ii.    requiring Defendant to protect, including through encryption, all data

36

collected through the course of business in accordance with all applicable regulations, industry standards, and federal, state or local laws;

iii. requiring Defendant to delete and purge the PII and PHI of Plaintiffs and Class Members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiffs and Class Members;

iv. requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of Plaintiffs' and Class Members' PII and PHI;

v. requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring, simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis;

vi. prohibiting Defendant from maintaining Plaintiffs' and Class Members' PII and PHI on a cloud-based database until proper safeguards and processes are implemented;

vii. requiring Defendant to segment data by creating firewalls and access controls so that, if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

viii. requiring Defendant to conduct regular database scanning and securing checks;

ix. requiring Defendant to monitor ingress and egress of all network traffic;

x. requiring Defendant to establish an information security training program that includes at least annual information security training for all employees,

with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling PII and PHI, as well as protecting the PII and PHI of Plaintiffs' and Class Members;

xi. requiring Defendant to implement a system of tests to assess their respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendant's policies, programs, and systems for protecting personal identifying information;

xii. requiring Defendant to implement, maintain, review, and revise as necessary a threat management program to appropriately monitor Defendant's networks for internal and external threats, and assess whether monitoring tools are properly configured, tested, and updated; and

xiii. requiring Defendant to meaningfully educate all Class Members about the threats that they face because of the loss of its confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves.

C. A mandatory injunction requiring that Defendant provide notice to each member of the Class relating to the full nature and extent of the Data Exposure and the disclosure of PII and PHI to unauthorized persons;

D. Enjoining Defendant from further deceptive practices and making untrue statements about the Data Exposure and the stolen PII and PHI;

E. An award of damages, including actual, nominal, consequential, and punitive damages, as allowed by law in an amount to be determined;

38

F.   An award of attorneys' fees, costs, and litigation expenses, as allowed by law;

G.   An award of pre- and post-judgment interest, costs, attorneys' fees, and expenses, as permitted by law;

H.   Granting Plaintiffs and the Class leave to amend this Complaint to conform to the evidence produced at trial;

I.   For all other Orders, findings, and determinations identified and sought in this Complaint; and

J.   Such other and further relief as this court may deem just and proper.

## JURY TRIAL DEMANDED

Under Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury for any and all issues in this action so triable as of right.


Dated: May 5, 2023                    Respectfully Submitted,

                                      */s/Dana S. Smith*

                                      Dana S. Smith (NC State Bar No. 51015)
                                      Mason A. Barney*
                                      Steven D. Cohen*
                                      **SIRI & GLIMSTAD LLP**
                                      745 Fifth Avenue
                                      Suite 500
                                      New York, NY 10151
                                      (980) 448-1299
                                      dsmith@sirillp.com

                                      Marcus J. Bradley*
                                      Kiley L. Grombacher*
                                      Fernando Valle, Jr.*
                                      **BRADLEY/GROMBACHER LLP**
                                      31365 Oak Crest Dr., Suite 240
                                      Westlake Village, CA 91361
                                      Telephone: 805-270-7100
                                      mbradley@bradleygrombacher.com

kgrombacher@bradleygrombacher.com
fvalle@bradleygrombacher.com

*pro hac vice forthcoming*

*Attorneys for Plaintiffs and the Putative Class*